UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUMBO MOVING & STORAGE, INC. | Index No.1:26-cv-01378 |
| Plaintiff, | |
| -against- | **FIRST AMENDED COMPLAINT** |
| PIECE OF CAKE MOVING + STORAGE, LLC | |
| Defendant. | |

Plaintiff, Dumbo Moving & Storage, Inc. ("Dumbo" or "Plaintiff"), by its undersigned counsel, hereby alleges as against Defendant, Piece of Cake Moving + Storage, LLC ("Piece of Cake" or "Defendant"), as follows:

1. This is an action for violations of antitrust statutes, as well as false advertising, and consumer protection statutes, against the largest provider of moving and storage services in the New York City market. Beginning from its inception in 2018, Piece of Cake has engaged in a scheme to monopolize the market and/or exclude competition through anticompetitive means. It began this scheme by engaging in predatory pricing, charging below market prices as well as overpaying for necessary goods and services in the relevant industry, order to gain an unfair competitive advantage and drive competition out of the market, eventually reaching a market share of greater than 50 percent  Once it had gained a majority share in the relevant market, it was able to utilize this market share to engage in a series of anticompetitive, exclusionary relationships with building managers, owners, and employees. By falsely denigrating its competition in various ways, Piece of Cake was able to cultivate exclusive relationships with a number of management companies and even superintendents, whereby no other companies were permitted to move in or

out of the buildings they were responsible for. Further, Piece of Cake has engaged in a scheme of anticompetitive labor practices by, rather than employing its movers, engaging in a series of independent contractor agreements with "owner operators," thereby misclassifying its movers as agents of other entities rather than its own employees.  Piece of Cake commits these unlawful labor practices to avoid paying its movers minimum wage, to avoid paying and withholding applicable taxes, and to avoid giving its movers benefits under the law. This unlawful scheme revolving around Piece of Cake's labor practices has given Piece of Cake an unfair advantage over its competitors, who cannot lawfully compete. What's more, Piece of Cake was even able to cultivate an exclusionary relationship with advertisers, such as Yelp, in a similar fashion to its exclusionary and anticompetitive relationships with building owners and management.

## THE PARTIES

2. Plaintiff Dumbo Moving & Storage is a New York corporation with its principal place of business at 15 N. Oxford Street, Brooklyn, NY 11205, and is engaged in the business of providing moving and storage services originating in the New York area.

3. Defendant Piece of Cake Moving & Storage is a New York corporation with its principal place of business at 405 Lexington Ave, Suite 740, New York, NY 10174 and is engaged in the business of providing moving and storage services originating in the New York area.

## FACTS COMMON TO ALL CLAIMS

### The Relevant NYC Market

4. Plaintiff and Defendant are two of the main companies operating in the market for residential professional moving and storage services within New York City (the "NYC Market"). For the purposes of this Complaint, the relevant Market is defined as those companies who offer

professional services to move individuals' property from residences within New York City to residences within New York City and its metropolitan area.

5. Professional moving and storage service companies offer comprehensive services for individuals and their households moving to a different residence. These companies offer a variety of moving, packing, and storage services for furniture and personal belongings. Before initiating a move, professional moving and storage companies wrap and pack belongings and furniture so as to not damage them during moves, if the customer so chooses. They then physically move these items into trucks, where they transport them to either a new residence or a storage location.

6. Approximately half of all individuals who move in New York City either self-move, or use friends or individuals for hire– not professional moving services. The other half use professional moving and storage companies. Between 450,000 and 550,000 moves take place in New York City per year, thus half of those may be reasonably estimated to be between 225,000 and 275,000 moves. The average residential mover is charged between $1000-1,100; thus, the total revenue in the NYC market may be reasonably estimated at between $225 million and $302 million.

7. When an individual wishes to contract with professional movers to move in or out of a building, they solicit bids from various moving companies. The amount that a moving company charges is generally based on the cubic square feet of items to be moved, the distance between locations, and miscellaneous charges, such as if there are stairs or particularly bulky furniture involved.

8. Professional moving and storage services are a discrete market in New York City. There is extremely limited cross-elasticity of demand with other markets, that is, professional moving and storage services fill a role that cannot be easily filled by other companies.

***The Anticompetitive and Tortious Conduct***

9. Piece of Cake entered the NYC Market in 2018. Since then, it has expanded rapidly, and is now the dominant company in the NYC Market, having obtained a greater than 50 percent share of the NYC Market. Piece of Cake's owner represents that he "launched Piece of Cake Moving with the purchase of one truck for $20,000. It has since grown to 350-plus trucks, completing over 100,000 moves annually, with 800 employees—and surpassing $100 million in annual revenue in 2023."[1] Piece of Cake's annual revenue has since risen to approximately $150 million, representing between 66 percent to 49 percent of total revenue in the NYC Market.

10. Piece of Cake's rapid expansion, beginning in earnest in August 2020, is both due to and a part of its overarching anticompetitive scheme to obtain monopoly power, and then wield that monopoly power to engage in a series of anticompetitive agreements or arrangements to exclude its competitors.

**i. Undercutting Pricing and Overpaying for Services**

11. Piece of Cake expanded rapidly by, among other things, charging below-market prices that other companies could not match, thereby increasing its market share.

12. In 2019, the year after Piece of Cake entered the market, and before it had expanded to the size it is today, the typical price per move in the NYC Market was either (1) $100 an hour per "mover" or (2) $1.25 per cubic feet of items to be moved in addition to a $3 per mile fee. It is the standard practice to pay the individual movers themselves a 40 percent commission – thus, the going rate of pay for movers was and remains 40 percent of $1.25 per cubic feet of items to be moved, or 50 cents per cubic feet of items to be moved.

---

[1]    Voyo Popovic, "In six years I've bootstrapped my moving company to $100M in revenue. Avoiding VC funding has been key", FORTUNE, Sep. 5, 2024, available at https://fortune.com/2024/09/05/bootstrapping-startup-avoiding-vc-funding-business-strategy/ (last viewed on January 15, 2026).

13. However, despite the United States experiencing inflation of approximately 26.72 percent between 2019 and 2025, Piece of Cake regularly undercuts the competition, offering rates *below the 2019 rates*, that competitors cannot hope to match.

14. Piece of Cake's campaign to cannibalize market share by pricing below what competitors could offer began early in its infancy. By 2022, Piece of Cake was consistently quoting customers between sixty and eighty cents per cubic foot of items to be moved, despite paying its movers approximately 40 percent of $1.25 per cubic foot of items they moved. In addition to the wages paid movers, moving companies also incur a marginal cost of approximately $.10-$.30 per cubic foot of items to be moved in the forms of gas, boxes, depreciation in value of their trucks, and other miscellaneous expenses.  Thus, Piece of Cake was not able to turn a profit on its moves, just barely breaking even, and sometimes even losing money on moves.

15.  For example, in March of 2022, Piece of Cake quoted a customer moving between West Midtown and Cobble Hill, Brooklyn, eighty cents per cubic foot of items to be moved, despite paying its movers approximately $.50 per cubic feet of items they moved, and other miscellaneous costs between $.10-$.30 per cubic feet. Piece of Cake did not turn a profit on this move.

16. As another example, in October of 2022, Piece of Cake quoted a customer moving between Gowanus, Brooklyn, and Astoria, Queens, *sixty cents* per cubic foot, despite paying its movers approximately $.50 per cubic feet and other miscellaneous costs between $.10-$.30 per cubic feet.  Piece of Cake lost money on said move.

17. As another example, in December of 2022, Piece of Cake quoted a customer moving from Chelsea, Manhattan, to Cobble Hill, Brooklyn, eighty cents per cubic feet, despite paying its movers $.50 per cubic feet of items to be moved, and other miscellaneous costs between $.10-$.30 per cubic feet. Piece of Cake did not turn a profit on said move.

18. For another instance, in May of 2023, Piece of Cake quoted a customer at 80 cents per cubic feet of items to be moved, despite paying their movers $.50 per cubic feet of items to be moved, and other miscellaneous costs between $.10-$.30 per cubic feet. Piece of Cake did not turn a profit on said move.

19. In another move in May of 2023, from Glen Oaks, on the border of Queens and Long Island, to the East Village, Piece of Cake quoted a customer at 80 cents per cubic feet of items to be moved, despite paying their movers $.50 per cubic feet of items to be moved, and other miscellaneous costs between $.10-$.30 per cubic feet. Piece of Cake did not turn a profit on said move.

20. Piece of Cake's predatory pricing continues to this day, as they continue to offer prices for moves below their breakeven point.

21. Because of Piece of Cake's predatory pricing, the going rate for moves has decreased from $1.25 per cubic feet of items to be moved to $1.10-1.15 of items to be moved.

22. In addition, Piece of Cake overbids for goods and services necessary to a moving company's operations, thereby keeping its competitors' from accessing these goods and services and increasing Piece of Cake's own market share.

23. Movers in the New York City market compete with each other for advertising. These advertisements include, but are not limited to physical advertising, advertising on social media, such as collaborating with social media "influencers,"  and "paid search" advertising, on platforms such as Google and Yelp.

24.  Piece of Cake's total advertising budget is slightly over $2 million a month. Piece of Cake spends about $550,000 on social media advertising, $1,150,000 on paid search advertising, and roughly another $400,000 on miscellaneous physical advertising and sponsorships – each and

every month. Given that Piece of Cake's monthly revenue is about $12 million, Piece of Cake spends about 17 *percent* of its *revenue* – not its profit, on advertising costs – far in excess of what a rational, profit-driven business could support.

25. Piece of Cake's rampant spending has driven up the price of all categories of advertising in the NYC Market.

26. The increases in prices of advertisements on Google and Yelp in the NYC Market are illustrative. Both Google and Yelp use an "automated auction system," in which companies bid on if their listings will return first when a customer is interested in certain keywords.  For instance, companies can bid on which websites or listings will return when a user searches "moving" and "NYC" or "New York City." Both Google and Yelp use an "automated auction system" in determining what results a user sees – in Google's case, websites, on its google search engine, and in Yelp's case, company listings. For instance, if a user navigates to Yelp, and searches for keywords related to moving companies, different results will return depending on how much a company bids on Yelp's services.

27. Piece of Cake regularly bids far in excess of its competitors or what is indeed rational for a company of its size to bid. Piece of Cake has raised the price of relevant Google keywords in the Market from approximately $25 per click in 2020 to $70 per click in the present day – an almost 300 percent increase in just five years, and far beyond what any of its competitors can afford to spend. Piece of Cake spends approximately $1 million a month on paid Google advertising, comprising approximately half of its monthly advertising budget of slightly over $2 million.

28. Piece of Cake has also outbid its competitors on access to Yelp listings. Prior to 2019, Dumbo had access to its own Yelp page, as well as paid Yelp advertisements. However, since Piece

of Cake began outbidding its competition, the price of Yelp keywords in the relevant market have increased by approximately 200 percent. Further, Piece of Cake has done this with the intent of shutting out its competitors from accessing advertising in the moving and storage business – which it has succeeded in, as Dumbo has not been *permitted* to bid on Yelp listings for years, and is not permitted to access its own Yelp page. Indeed, upon information and belief Piece of Cake, along with Yelp, is shutting Dumbo out of a critical advertising platform. However, Piece of Cake has access to its listing, and upon information and belief, is able to maintain an artificially high rating through its relationship with Yelp.

29. Piece of Cake underbids its competition for jobs, and overbids for services with the intent to gain monopoly power in the market, and force its competition out of business. Indeed, Piece of Cake has already obtained greater than fifty percent market share in the Market, and its anticompetitive practices have already caused Wayne Moving, a thirty-year veteran of the moving industry in New York City, to go out of business in January of 2025. Flat Rate Movers, another longtime veteran of the moving industry, is also no longer operational.

30. Further, Piece of Cake's overbidding for services has caused Dumbo's market share to decline from $27 million in revenue in 2020, approximately 10 percent of the market in 2020, to $22 million in 2025, approximately seven to nine percent of the market in 2025.

## ii. Piece of Cake's Anticompetitive Arrangements With Building Owners and Management Agencies

31. Piece of Cake has anticompetitive relationships with at every level of buildings that people wish to move in and out of, from superintendents to the management companies themselves. Piece of Cake enters into anticompetitive relationships with management companies and buildings to be their "preferred" movers. The "preferred" label is a smokescreen for an exclusive relationship whereby no one but Piece of Cake may move into or out of their business.

32. For instance, Piece of Cake has entered into a "preferred" relationship with Mason Management Corp d/b/a "Stellar Management" ("Stellar Management,") whose website boasts that it "manages over eighty buildings"[2] in the New York area. Pursuant to this "preferred" relationship, Stellar Management instructs its residents that only Piece of Cake and a miniscule competitor, Seaman's Moving, are permitted to move into and out of buildings managed by Stellar Management at any time, while both Dumbo and Flat Rate moving are "not allowed on the property." A copy of the written requirements given to prospective and actual tenants of Stellar Management's buildings, if they wish to move into or out of Stellar Management's building is enclosed:

---

[2] https://www.stellarmanagement.com/mhome.aspx

~~Approved Movers:~~ (do not require deposit or indemnification agreement)

    ✓ Piece of Cake

    ✓ Seaman's Moving

\*\*\* **At this time Flat Rate and Dumbo movers are not allowed on the property.**

- **Please email your request to:** ipleasing@stellamanagement.com.
  For expedited response please include the below in your email request:
  (1) Full building address and apartment.
  (2) Date of service.
  (3) Tenant(s) full name(s).
  (4) If using an approved mover, please include a copy of receipt or have mover email u
      with item (1) through (3).

**Certificate of Insurance (COI)**

- Leasing does not provide COI "samples" or fill out vendor forms, tenant should use/sha
  any vendor COIs.
- All COI information is listed below. COI must include the following:
  (1) Date of delivery/move.
  (2) Full address
  (3) Full name of all tenants covered by the COI.
  *These items are to be listed in "Description of Operations" of the "Additional Remarks*
  *COI.*

| **Certificate Holder:** | **Additional Insured:** |
|---|---|
| IP Mortgage Borrower LLC | *(Entered in "Description of Operations)* |
| 80 North Moore Street, 2nd Fl. | Mason Management Services Corp D/B/A |
| New York, NY 10013 | Stellar Management |
| | 80 North Moore Street, 2nd Fl. |
| | New York, NY 10013 |

33. Seaman's Moving only owns between three and five moving trucks, and is not a serious threat to Piece of Cake's market share. Upon information and belief, its inclusion is to obfuscate the anticompetitive relationship between Piece of Cake and Stellar Management.

34. Piece of Cake has been able to adopt the "preferred" label by denigrating their competition through a myriad of false statements. For instance, Piece of Cake claims to building owners, managers, and superintendents that its Certificates of Insurance ("COI") are superior to its competitors, when in fact, they are not. In addition, upon information and belief, Piece of Cake

denigrates its competitors to these buildings, claiming that its competitors have inferior or unsafe insurance, when they do not.

35. In order to move into and out of a building, most buildings generally require the moving company to present a COI proving that it has the requisite insurance to move into and out of a building. Most moving companies contract with large insurance providers, but Piece of Cake is self-insured, using a captive insurance corporation.

36. Upon information and belief, Piece of Cake falsely claims that its own captive insurance is superior to its competitors. And because Piece of Cake is of course, the only client of its captive insurance corporation, it can falsely claim that it and only it, has superior insurance to its competitors.

37. Indeed, upon information and belief, Piece of Cake directs its captive insurance corporation to create false distinctions between its COIs and other moving companies, in order to use the COI as a pretext to reject Piece of Cake's competitors'.

38. For instance, on March 18, 2024, an already existing customer contacted Dumbo and stated that the building he was moving into had rejected Dumbo's COI for inexplicable reasons, and instead "they already have piece of cake moving COI," so he was going to use Piece of Cake instead. This is just one of the ways in which Piece of Cake effectuates exclusive relationships with buildings.

39. Further, Piece of Cake falsely claims to building owners that it will be less disruptive of their operations. This is because Piece of Cake parks and moves its trucks with wanton disregard for applicable laws, allowing it to gain an unfair competitive advantage. Piece of Cake's flouting of operative moving and parking regulations is well-known, and well-documented.[3]

---

[3] For instance, this articles details Piece of Cake's Behavior. Nick Garber for Patch, "Street-Clogging Astoria Moving Trucks Come Under Residents' Scrutiny" Jun. 6, 2022 https://patch.com/new-york/astoria-long-island-

40. By showcasing its unfair competitive advantage, upon information and belief, Piece of Cake is able to assure building owners that it will park its trucks where is least disruptive of their operations – regardless of it these are legal parking jobs or not. Legitimate competitors who do not serially break laws cannot compete in the same fashion. Upon information and belief, Piece of Cake falsely claims that it has an arrangement with the city of New York that permits it to violate parking and moving laws in this fashion – but its competitors do not. Upon information and belief, Piece of Cake is able to cultivate exclusive relationships with building owners by touting its illegal actions as legitimate competition – when it clearly is not.

41.  Upon information and belief, Piece of Cake also denigrates the quality of its competitors' workers. Upon information and belief, Piece of Cake states that its competitors' workers are ill-trained, unsupervised or run illegal or somehow unsafe operations – when it is in fact, as demonstrated herein, it is Piece of Cake who runs serially unlawful operations.

42. The following property management and development companies have entered into anticompetitive relationships with Piece of Cake whereby Piece of Cake is deemed a "preferred mover" and many of Piece of Cake's competitors, including Dumbo, are excluded from the premises:

- Stellar Management

- Rose Associates, Inc.

- Stonehenge Management LLC

- RXR Realty

**iii. Piece of Cake's Anticompetitive Relationships With Employees of Buildings**

---

city/street-clogging-astoria-moving-trucks-come-under-residents (last accessed November 14, 2025). These social media threads do as well: https://www.reddit.com/r/astoria/comments/1drn5qg/look_at_this_amazing_parking_job; https://www.reddit.com/r/astoria/comments/18cvfjy/today_in_fck_everyone_else_piece_of_cakes_most/

43. But Piece of Cake's anticompetitive relationships are not just at the level of upper management. Piece of Cake has also managed to convince superintendents and doormen of buildings, who are often responsible for approving COIs, and therefore moves in and out of buildings, to enter into an exclusive anticompetitive relationship with them. In exchange for refusing to approve any of its competitors' COIs (and therefore any moves at all), Piece of Cake pays the employees a 15 percent commission.

44. Piece of Cake's CEO, Vojin Popovic, has a close relationship with an individual named Refik Radoncic. Mr. Radoncic is well-known in the Montenegrin community, and is the head of a Montenegrin social club which regularly hosts Montenegrin diplomats.[4]

45. Among the membership of this social club are numerous doormen and superintendents. These doormen and superintendents are responsible for approving moves into and out of buildings.

46. Through Mr. Radoncic, Mr. Popovic has met with many doormen and superintendents who Mr. Popovic has convinced to no longer permit Piece of Cake's competitors to move into or out of their buildings. Piece of Cake pays these doormen and superintendent a commission of approximately 15 percent of the cost of each move in order to secure their collaboration.

47. Upon information and belief, Piece of Cake also denigrates its competitors to these doormen in the ways described above. Upon information and belief, Piece of Cake has stated to doormen that (1) its competitors' COI's are inadequate, (2) it has arrangements with the city of New York permitting it to park where it wishes, and (3) its competitors' employees are inadequately trained and/or supervised.

---

[4] https://www.gov.me/en/article/165104--prime-minister-mdukanovic-meets-in-new-york-with-emigrants-from-montenegro

48. Superintendents from the following buildings have informed Dumbo that they have exclusive relationships with Piece of Cake, and, as a consequence, will no longer work with Dumbo:

- 350 Lincoln Place, Brooklyn, NY 11238

- 184 Kent Ave, Brooklyn, NY, 11249

- 365 Bond Street, Brooklyn, NY 11231

- 105 Montague Street, Brooklyn, NY 11231

- 350 East 30th Street, New York, NY 10016

49. Piece of Cake has created this arrangement with superintendents and employes of buildings in order to drive out its competition.

**iv. Piece of Cake's Anticompetitive Labor Practices**

50. Piece of Cake additionally engages in labor practices with anticompetitive effects, by concocting a scheme whereby Piece of Cake works with "owner-operators" to misclassify its movers' employment status, claiming they are independent contractors of *the owner-operators*, even though, as we demonstrate herein, Piece of Cake exercises an extreme degree of control over them. Therefore, Piece of Cake's movers should be classified as employees, not independent contractors.

51. Piece of Cake engages in this scheme to (1) avoid paying its employees applicable minimum wage and (2) avoid paying and withholding applicable taxes and unemployment insurance obligations, and (3) avoid giving other benefits to its employees, such as FMLA leave. The scheme Piece of Cake and the "owner operators" engages in is anticompetitive.

52. Piece of Cake does not categorize its movers as employees. Rather, Piece of Cake labor utilizes "crews," who are contracted by "owner-operators" for its moves. Piece of Cake will solicit

and accept jobs from customers, and then use these "crews" to fulfill these orders.  While these "crews" are typically comprised of one foreman, and then at least one other mover, they are not treated as Piece of Cake's employees. After the job is completed, Piece of Cake then pays the "owner-operator" of a "crew" a commission, who then (in theory) gives a percentage to his foreman, who then in turn distributes the rest of the commission to the employees under him. However, Piece of Cake does not investigate whether the "owner-operator" is actually distributing the earnings, nor does it pay an hourly wage or benefits to its movers. Indeed, when movers complain about being underpaid, Piece of Cake informs them that their hands are tied, and the mover should talk to their owner operator.

53. While its movers are nominally not employees of Piece of Cake, Piece of Cake imposes stringent and wide-reaching requirements on its movers that provide Piece of Cake with substantial if not overwhelming control over them. Piece of Cake imposes the following requirements on its movers:

- Piece of Cake makes each member of a crew sign an agreement that they will abide by Piece of Cake policies, including using only trucks with Piece of Cake's branding, use routes imposed by Piece of Cake, and use materials supplied by Piece of Cake.

- Piece of Cake imposes rigorous uniform requirements on its movers, requiring them to wear branded shirts, pants, and jackets with Piece of Cake's branding – which movers are forced to purchase at their own expense.

- Piece of Cake imposes strict requirements for how to wrap and move different kinds of furniture. For instance, all wood must be covered in blankets, and Piece of Cake's movers are not permitted to move tables with legs on them.

- Piece of Cake additionally requires its movers to submit time sheets and perform mandatory feedback calls after the completion of a job.

- Piece of Cake requires its movers to do mandatory check-ins at various stages (such as picking up a truck, collecting cash from a customer, or checking inventory against the items to be moved) on its app during, before, and after a moving job.

- Piece of Cake requires its movers to arrive at its own lot two hours before a move, in order to undergo a pre-move checklist and prepare materials. Further, Piece of Cake requires its movers to arrive at the pick-up spot at least 20 minutes before the designated arrival time. All of this is unpaid.

- Piece of Cake even has strict requirements about *what movers say to the clients themselves.*

- Any modifications to a move, such as charges for unexpected items or stairs, must go through Piece of Cake. Movers are forbidden from even discussing the charges with the customer, and are required to direct them to Piece of Cake's management. Thus, movers may not set their own rates for *modifications*.

- If a mover fails to abide by any of these requirements – they are fined, and their commission is docked accordingly. Indeed, some weeks, Piece of Cake claims its movers owe it money rather than pay them a commission.

- Piece of Cake prohibits its movers from taking time off, as if they take a vacation, they will not be permitted to be staffed on a Piece of Cake job after returning.

54. Piece of Cake's only formal relationship is with the "owner-operator" of its crews, with whom it has an independent contractor agreement. The "owner-operator," in turn, has a separate agreement with the movers, to which Piece of Cake is not a party. In order to keep its costs down,

Piece of Cake pays the "owner operator" a commission, while refusing to pay its movers directly. Indeed, when movers complain to Piece of Cake that either they are underpaid, or the "owner operator" refuses to pay them, Piece of Cake responds that it is unable to help, because the mover does not work for Piece of Cake, but rather the owner operator. This is particularly nefarious because *Piece of Cake* imposes mandatory deductions for *any violations of its numerous policies* which are then passed on to the *mover*, not the owner operator. At the same time, most customers tip through the card they pay with, not cash. Thus, the mover both takes the risk of having deductions imposed by Piece of Cake and does not reap any benefits unless the "owner operator" deems it worthy to remit the tips to the movers themselves.

55. Piece of Cake knows the identity of the "crews," as it makes all of its movers sign agreements that they will abide by its policies and issues each "crew: a unique number. Thus, Piece of Cake *could* pay its moves without going through a middleman. It chooses not to in order to reap the following benefits.

56. Piece of Cake benefits from the aforesaid scheme, as follows: (i) not being to required to pay its movers a minimum hourly wage, (ii) not being required to pay applicable taxes associated with employees and not independent contractors, including but not limited to social security taxes, Federal and State unemployment insurance taxes, Medicare taxes, and (iii) not being required to give its movers mandatory benefits under State and Federal law, such as New York States' mandatory sick leave, or leave under the Federal Family and Medical Leave Act of 1993 ("FMLA") and New York's Paid Family Leave Act ("PFLA"). Even though Piece of Cake uses hundreds of movers, it evades FMLA and other laws which apply to businesses which have 50 or more employees.

57. Piece of Cake's competitors are harmed by Piece of Cake's aforesaid scheme. This scheme fundamentally distorts market competition in the NYC Market.

58.  The following is an example of Piece of Cake's implementation of the aforesaid scheme.

59. Two movers who worked for Piece of Cake until May of 2024 were forced to cease working for Piece of Cake, because Piece of Cake routinely took deductions from their commissions. In so doing,  these employees received compensation far less than they were entitled to receive. In one case, Piece of Cake refused to pay any commission, and instead sent them a statement that their account had a balance of *negative $300* for alleged policy violations. Instead of paying at least minimum wage, Piece of Cake often insisted that the movers owed money to Piece of Cake.

60. When these two moves publicly complained about Piece of Cake's conduct, Piece of Cake retaliated against them. In particular, Piece of Cake assigned someone to impersonate an officer of the New York City Police Department, allegedly named "Robert David Keppel,"[5] who attempted to intimidate these employees.

61. Upon information and belief, it is common practice for Piece of Cake to retaliate in this or a similar manner against movers who complain about their compensation and working conditions.

**v. Piece of Cake's Anticompetitive Parking and Moving Arrangements**

62. As intimated above, Piece of Cake also regularly flouts traffic laws, and engages in illegal and unsafe parking and other moving violations as a matter of course, which it could not do absent acquiescence from both building owners and city officials.

63. Piece of Cake's parking and moving violations are a consistent issue for many residents of New York City, who complain about it publicly to Piece of Cake, building owners, and elected officials.

---

[5] Curiously, the real Robert David Keppel was a well-known and respected criminologist, who passed away in 2021.

64. No less than eight different residents of one New York City neighborhood, Astoria, have complained about Piece of Cake's moving and parking violations *on the same community board.*

65. As one example of a typical complaint, a poster sarcastically congratulates a Piece of Cake truck blocking a crosswalk on its "amazing parking job," commending them, using an expletive, for the courage it must take to "park like this overnight a block from a [police] precinct."[6]

66. One comment on the same thread observed "There should be a more harsh punishment when there is a consistent pattern of disregarding the law. It's clearly their 'strategy…'"

67. Another commenter *on the same thread* stated "These guys nearly ran over me on Steinway, just speeding through red lights not caring at all. One day someone's gonna get killed. It's crazy. **Specifically this moving company**. I see problems with them all the time."[7]

68. Another thread showing a Piece of Cake truck parked on the sidewalk, completely blocking the entrance to a building, referred to "Piece of Cake's most egregious [parking job] yet," using an expletive for emphasis:[8]

---

[6]    https://www.reddit.com/r/astoria/comments/1drn5qg/look_at_this_amazing_parking_job/.

[7]    *Id.* (emphasis supplied).

[8]    https://www.reddit.com/r/astoria/comments/18cvfjy/today_in_fck_everyone_else_piece_of_cakes_most/.



69. Yet another thread complained that "Piece of Cake is back to treating our neighborhood like their own personal parking garage."[9]

70. Residents complain not only about Piece of Cake's parking violations, but also its unsafe and dangerous driving practices. For instance, one resident complained about "Piece of Cake Mover Trucks flying through the neighborhood" and that she had "almost got hit twice on the crosswalk." [10]

71. Other commenters chimed in, with one stating "Yup. They speed, ignore stop signs and routinely blow red lights. They also still park their trucks on the street overnight, even after they got their parking lot.  They know there's zero enforcement.  The few tickets they receive are a tiny tax on doing business." [11]

72. Again, all of these complaints are from *one* community group.  But Piece of Cake engages in these illegal and unsafe practices as a matter of course throughout New York City.

73. Piece of Cake could not do these acts absent acquiescence from city officials, who turn a blind eye.

74. Upon information and belief, Piece of Cake has conspired with officials and administrators in the New York City government in order to permit it to park its trucks illegally and engage in moving violations as a matter of course.

75. Residents in New York City neighborhoods are frustrated with the lack of enforcement against Piece of Cake's trucks for their numerous and widespread traffic violations. Dozens, if not

---

[9] https://www.reddit.com/r/astoria/comments/12z1bq6/piece_of_cake_is_at_it_again/

[10] https://www.reddit.com/r/astoria/comments/1lunsdo/piece_of_cake_mover_trucks_flying_through_the/

[11] *Id.*

hundreds of residents have complained to their elected officials and police precincts about Piece of Cake's behavior.[12]

76. Nevertheless, Piece of Cake is able to continue its illegal parking, putting it an advantage over competitors who obey the law. Indeed, Piece of Cake's competitors are *physically* excluded from the locations it parks its trucks. Piece of Cake could not continue to violate the law in such a flagrant way absent an arrangement with officials and building owners to ignore its violations.

**vi. Piece of Cake's Anticompetitive Arrangements Regarding Advertising**

77. As detailed above, Piece of Cake has outbid its competitors for access to advertising on both Google's and Yelp's platforms. However, Piece of Cake's actions do not stop there. Piece of Cake's overpayments have allowed its ownership to cultivate a close relationship with Yelp, which, upon information and belief, it has used to exclude its competitors from access to these platforms, and ensured that its competitors have lower ratings and correspondingly, less business.

78. In April 2020, Piece of Cake and Yelp announced they were partnering:

---

[12] For instance, this article details residents and junior officials who have complained about Piece of Cake's Behavior. Nick Garber for Patch, "Street-Clogging Astoria Moving Trucks Come Under Residents' Scrutiny" Jun. 6, 2022 https://patch.com/new-york/astoria-long-island-city/street-clogging-astoria-moving-trucks-come-under-residents (last accessed November 14, 2025).



79. Just four months later, in August 2020, Dumbo was banned from Yelp for unexplained reasons.

80. Dumbo's ban was set to expire a year later. However, Dumbo's ban was not lifted, even though Yelp assured that it would be at that time. To this day, for nearly *six years* Dumbo still cannot access its own listing or advertise on Yelp – period, while Piece of Cake heavily advertises through Yelp.

81. Piece of Cake's collaboration with Yelp has continued for years:



82. Upon information and belief, Piece of Cake has wielded its influence to get its competitor, Dumbo banned from Yelp, while it has used Yelp to gain an untold number of customers, thereby increasing its market share and excluding its competitors from the market. While Piece of Cake enjoys high Yelp ratings, all of its major competitors, including Dumbo, Oz Moving, Flat Rate Moving, and Schleppers have ratings of three stars or lower.

83. Indeed, while Yelp claims to police its reviews expeditiously, and does not permit businesses to alter reviews on its websites or offer incentives for reviews. However, Yelp permits Piece of Cake to offer incentives in exchange for favorable reviews and otherwise manipulate its listing.

84. Piece of Cake offers customers incentives, such as free or discounted moving services, in exchange for leaving positive reviews on review sites, such as Yelp and Google maps.

85. Further, upon information and belief, Piece of Cake pays individuals to post fake positive reviews on its behalf.

86. Further, Piece of Cake's movers will, as a matter of course, demand that a customer leave a five-star review before completing the move. Upon information and belief, these instructions are given to movers by Piece of Cake's management.

87. Suppressing negative reviews, offering goods in exchange for positive ones, and posting fake reviews is a tactic known as "astroturfing," and is illegal under both Federal law and New York state law. [13]

88. The sheer number of reviews Piece of Cake has amassed in such a short time is inexplicable. Piece of Cake – a company which has only been operating for seven years, has 2,400 reviews on Yelp. Dumbo, a company which has been operating for *seventeen* years, has 2,100 reviews on Yelp.

89. The difference is even more staggering on Google. Dumbo, which again has operated for ten more years than Piece of Cake, has 3,956 Google reviews. Piece of Cake has nearly *three times* as many, with 11,835 reviews.

90. Further, profiles on review sites with no pictures and only one or two five-star reviews are inherently suspicious. They imply that the profile was made solely to give a company a five-star review.

91. Many of Piece of Cake's reviews are from profiles that only have one five star review- Piece of Cake. For instance, this individual has been supposedly active on Yelp Since August 2012,

---

[13] For instance, the New York Attorney General sued an orthopedic doctor under Gen. Bus. L. §§349 and 350 for posting fake positive review of his practice for "engag[ing] in efforts to manipulate numerous online review platforms by suppressing authentic, negative patient reviews and procuring fraudulent, positive reviews of Respondents" *See* Assurance of Discontinuance No. 23-053, In the Matter of Highlight Orthopedics PLLC at ¶2, available at https://ag.ny.gov/sites/default/files/settlements-agreements/mohrmann-merged-aods.pdf. Further, the Federal Trade Commission has banned the practice. *See* 16 C.F.R. §465.2.

but          has          one          review,          for          Piece          of          Cake:



92. These other profiles on Yelp similarly have no photograph and only one review – five stars, for Piece of Cake:



93. Yelp claims to expeditiously police its service for this behavior, and indeed, even claimed that Dumbo was manipulating its reviews. However, upon information and belief Yelp

ignores Piece of Cake's review manipulation as part of an anticompetitive arrangement to boost

Piece of Cake's market share by denigrating its competition.

94. Upon information and belief, Piece of Cake astroturfs on Google, as well. The

following profiles on Google Maps evince the same suspicious pattern:





95. Other individuals have noticed this pattern of behavior as well, with one individual claiming that if one looks for advice on moving in Brooklyn on the internet, " There will be several responses from extremely low Karma accounts that suggest Piece of Cake Moving using effusive, bot-like language. This is true across Bushwick, BedStuy, etc subreddits. This is clear Search Engine Optimization by spamming positive reviews. These accounts are clearly fake and Piece of Cake even lazily runs ads in these same posts."[14]

---

[14] https://www.reddit.com/r/Brooklyn/comments/1fdzous/astroturf_warning_piece_of_cake_moving/

**vii. Piece of Cake's False Advertising**

96. Piece of Cake also claims to offer a "guaranteed, all-inclusive quote." Nothing could be further from the truth.

97. Instead, as demonstrated above, Piece of Cake initially quotes a potential customer an unreasonably low rate, in order to price their competition out.

98. The customer, thinking they are getting a more competitive rate, accepts Piece of Cake's initial offer.

99. However, once Piece of Cake picks up the customer's items and is in the process of moving, they demand further payment, whether through bogus fees, aggressive demands for tips, or merely extortion.

100. These bogus fees can include, but are not limited to, fees for false claims that there are more items than those included in the quote, fees for false assertions that there are stairs or impediments that were not included in the quote, and fees for false claims that the distance to be moved is greater than that imagined in the quote.

101. As an example, one of Piece of Cake's customers has stated that while they had given Piece of Cake a video and pictures of all the items to be moved prior to the quote, and were quoted $500 for a move. They ended up paying *three times* that amount in bogus fees, and when the customer pushed back on these fees, Piece of Cake's response was "If I didn't pay, they'd leave my stuff on the curb," after Piece of Cake had already picked up their furniture.[15]

102. Other customers have posted similar stories. For instance, in a post titled "do not use piece of cake movers," one stated that after paying a deposit and "Day of move was complete nightmare. While loading my boxes, Adam called and said they would need to charge me an extra

---

[15] https://www.reddit.com/r/NYCapartments/comments/1m49qaq/my_peice_of_cake_moving_experience/

$2000 for packing 40 more boxes!?... I should have read the reviews more carefully - several people wrote about how they hold your items "hostage" in their truck."[16] Other commenters confirmed they had the "same experience." *Id.*

103. These bogus fees also include "tips," which Piece of Cake's employees strongarm customers into giving. While tips are ostensibly optional, Piece of Cake's employees will demand them from customers, often at a minimum of 20 percent. For instance, one of Piece of Cake's customers stated that "After that, they told me a tip is typical after moving and I told them that's fine and took the venmo/zelle of the mover. 5 minutes after leaving my apartment, they called asking where the tip is and that 20 percent is minimum for tipping. I was going to tip anyway, but it felt they kind of imposed the amount and minimum on me when I honestly feel it was a 10-15 percent tip out of the already expensive moving cost was reasonable enough."[17]

104.  Numerous other complaints confirm that Piece of Cake's "guaranteed, all-inclusive quote," is nothing more than a sham, and that its mover frequently shake down customers for bogus fees and non-optional tips.[18] Legitimate competitors, who offer accurate, truly all-inclusive price quotes, cannot compete with Piece of Cake's false quotes.

---

[16]  https://www.reddit.com/r/NYCapartments/comments/1q4y1zx/do_not_use_piece_of_cake_movers/
[17]  https://www.reddit.com/r/astoria/comments/1gmtsqr/not_too_thrilled_with_piece_of_cake_movingwhat/
[18]  https://www.facebook.com/groups/511738808873800/posts/8163724423675162/;
https://www.bbb.org/us/ny/new-york/profile/moving-and-storage-companies/piece-of-cake-moving-0121-177117/complaints;

**FIRST CAUSE OF ACTION**

(Against Piece of Cake for violations of §1 of the Sherman Act, 15 U.S.C. §1)

105. Dumbo repeats, reasserts and realleges all of the above allegations as set forth in their entirety herein.

106. As alleged above, Piece of Cake has conspired, and continues to conspire with operators and employees of buildings in New York to exclude, and entered into combinations for the purpose of excluding Piece of Cake's competitors from moving into or out of said buildings. As alleged above, these conspiracies and/or combinations are effectuated by *inter alia,* making Piece of Cake their "preferred" mover, and refusing to permit Piece of Cake's competitors to move into or out of their buildings.

107. Piece of Cake and its coconspirators aforesaid improper conduct has already had, and continues to have, the effect of substantially reducing or eliminating competition in the relevant market, by precluding Piece of Cake's competitors, including Dumbo, from moving into or out of certain buildings.

108. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and continue to harm consumers by minimizing competition and enabling itself to maintain supercompetitive prices in the relevant market.

109. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

110. For the foregoing reasons, Piece of Cake and its coconspirators are engaging in unreasonable restraint of trade in violation of the Section 1 of the Sherman Act, 15 U.S.C. §1, et seq.

111.  Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

112. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anticompetitive impact on consumers and the market or to remedy the impact on Dumbo.

**SECOND CAUSE OF ACTION**
(Against Piece of Cake for violations of §1 of the Sherman Act, 15 U.S.C. §1)

113. Dumbo repeats, reasserts and realleges all of the above allegations as set forth in their entirety herein.

114. As alleged above, Piece of Cake has conspired, and continues to conspire with "owner operators" of to misclassify Piece of Cake's movers as independent contractors of the "owner operator" when in fact, they should be legally classified as employees of Piece of Cake. Piece of Cake does so with the intent to avoid paying applicable wages, taxes, and benefits to its movers.

115. Piece of Cake and the "owner operators" aforesaid improper conduct has already had, and continues to have, the effect of substantially reducing or eliminating competition in the relevant market, by giving Piece of Cake an unlawful competitive advantage over its lawful competitors.

116. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and continue to harm consumers by minimizing competition and enabling itself to maintain supercompetitive prices in the relevant market.

117. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

118. For the foregoing reasons, Piece of Cake and its coconspirators are engaging in unreasonable restraint of trade in violation of the Section 1 of the Sherman Act, 15 U.S.C. §1, et seq.

119. Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

120. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anticompetitive impact on consumers and the market or to remedy the impact on Dumbo.

## THIRD CLAIM FOR RELIEF
(Against Piece of Cake for violations of §2 of the Sherman Act, 15 U.S.C. §2)

121. Dumbo repeats, reasserts and realleges all of the above allegations as set forth in their entirety herein.

122. The Market constitutes a distinct market for services, because the services offered by each of the main providers of professional moving and storage services are substantially substitutable for each other but collectively are not readily substitutable with any other readily accessible service, and the market by definition is limited geographically to the New York City area.

123. As alleged above, Piece of Cake has attempted to monopolize the Market by setting prices below the legitimate cost of doing business in an attempt to drive competition out of the market.

124. Piece of Cake is able to do so, in part, by misclassifying its workers as "independent contractors," thereby minimizing its own costs. Both Piece of Cake's workers and its legitimate competitors are harmed as a result.

125.  Piece of Cake's aforesaid improper conduct has already had, and continues to have, the effect of substantially reducing or eliminating competition from Dumbo and other moving companies from the Market, who cannot hope to compete with its pricing below the cost of doing business. As alleged above, Piece of Cake has already driven several of its longstanding competitors out of the Market.

126. As of today, Piece of Cake has over fifty percent share in the Market. There is a dangerous probability that other competitors will follow suit, leaving Piece of Cake to be the sole remaining member of the Market.

127. By reason of the foregoing, there is a dangerous probability that Piece of Cake will harm and continue to harm consumers by minimizing competition and enabling itself to maintain supracompetitve prices in the relevant market.

128. By reason of the foregoing, Piece of Cake has harmed Dumbo by substantially reducing its market share and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

129. Piece of Cake has engaged and continues to engage in the aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in the market and to cause Dumbo to lose market share, customers, and revenues.

130. For the foregoing reasons, Piece of Cake is engaging in attempted monopolization in violation of the §2 of the Sherman Act, 15 U.S.C. §2

131. Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

132. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anticompetitive impact on consumers and the market or to remedy the impact on Dumbo.

## **FOURTH CAUSE OF ACTION**
(Against Piece of Cake for violations
of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.
regarding anticompetitive arrangements with buildings)

133. Dumbo repeats, reasserts and realleges all of the above allegations as set forth  in their entirety herein.

134. As alleged above, Piece of Cake has conspired, and continues to conspire with operators and employees of buildings in New York to exclude, and/or entered into arrangements for the purpose of excluding Piece of Cake's competitors from moving into or out of said buildings. As alleged above, these conspiracies and/or arrangements are effectuated by *inter alia,* refusing to permit anyone Piece of Cake's competitors to move into or out of their buildings.

135. Piece of Cake and its coconspirators aforesaid improper conduct has already had, and continues to have, the effect of substantially reducing or eliminating competition in the relevant market, by precluding Piece of Cake's competitors, including Dumbo, from moving into or out of certain buildings.

136. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and continue to harm consumers by minimizing competition and enabling itself to maintain supercompetitive prices in the relevant market.

137. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

138. For the foregoing reasons, Piece of Cake and its coconspirators are engaging in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340, et seq.

139.  Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

140. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anticompetitive impact on consumers and the market or to remedy the impact on Dumbo.

## FIFTH CAUSE OF ACTION
(Against Piece of Cake for violations
of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.
regarding anticompetitive arrangements with Yelp)

141. Dumbo repeats, reasserts and realleges all of the above allegations as set forth  in their entirety herein.

142. As alleged above, Piece of Cake has conspired, and continues to conspire with Yelp to exclude, and/or entered into arrangements for the purpose of excluding Piece of Cake's competitors from advertising their moving and storage services.

143. Piece of Cake and its coconspirators aforesaid improper conduct has already had, and continues to have, the effect of substantially reducing or eliminating competition from Dumbo in the relevant market, by substantially reducing Dumbo's ability to advertise.

144. By reason of the foregoing, Piece of Cake and Yelp have harmed and continue to harm consumers by minimizing competition and enabling itself to maintain supercompetitive prices in the relevant market.

145. By reason of the foregoing, Piece of Cake and Yelp have harmed and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

146. For the foregoing reasons, Piece of Cake and Yelp are engaging in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340, et seq.

147. Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

148. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anti-competitive impact on consumers and the market or to remedy the impact on Dumbo.

## <u>SIXTH CAUSE OF ACTION</u>
(Against Piece of Cake for Violations
of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.
regarding anticompetitive relationships with New York City Officials)

149. Dumbo repeats, reasserts and realleges all of the above allegations as set forth in their entirety herein.

150. As alleged above, Piece of Cake has conspired, and continues to conspire with officials in New York responsible for policing and responding to parking and moving violations, to ignore its parking and moving violations.

151. Piece of Cake and its coconspirators aforesaid improper conduct has already had, and continues to have, the effect of substantially reducing or eliminating competition from Dumbo in the relevant market, by giving Piece of Cake the ability to park its trucks and access locations that its competitors lawfully cannot.

152. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and continue to harm consumers by minimizing competition and enabling itself to maintain supercompetitive prices in the relevant market.

153. By reason of the foregoing, Piece of Cake and its coconspirators have harmed and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

154. For the foregoing reasons, Piece of Cake and its coconspirators are engaging in unreasonable restraint of trade in violation of the Donnelly Act, New York Gen. Bus. L. § 340, et seq.

155.  Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

156. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anti-competitive impact on consumers and the market or to remedy the impact on Dumbo.

**SEVENTH CAUSE OF ACTION**
(Against Piece of Cake for violations
of the Donnelly Act, New York Gen. Bus. L. § 340, *et seq*.
regarding predatory pricing in the relevant market)

157. Dumbo repeats, reasserts and realleges all of the above allegations as set forth in their entirety herein.

158. As alleged above, Piece of Cake has attempted to unreasonably restrain trade in the Market by entering into contracts for moving services below its cost of doing business in an attempt to drive competition out of the market.

159.  Piece of Cake's aforesaid improper contracts have already had, and continues to have, the effect of substantially reducing or eliminating competition from Dumbo and other moving companies from the Market, who cannot hope to compete with its pricing below the cost of doing business.

160. As alleged above, Piece of Cake's contracts for prices below its cost of doing business have already driven several of its longstanding competitors out of the Market such as Wayne Moving and Flat Rate Moving. There is a dangerous probability that other competitors will follow suit, leaving Piece of Cake to be the sole remaining member of the Market.

161. Piece of Cake already has a market share greater than fifty percent of the Market. By reason of the foregoing, there is a dangerous probability that Piece of Cake will harm and continue to harm consumers by minimizing competition and enabling itself to maintain supercompetitive prices in the relevant market.

162. By reason of the foregoing, Piece of Cake has harmed and will continue to harm Dumbo by minimizing Dumbo's ability to compete with Piece of Cake, and thereby reducing Dumbo's cost and revenues.

163. Piece of Cake has engaged and continues to engage in the aforesaid improper conduct knowingly and purposefully, with the intent to harm competition in the market and to cause Dumbo to lose market share, customers, and revenues.

164. For the foregoing reasons, Piece of Cake and its unwitting coconspirators are engaging in attempted monopolization in violation of the Donnelly Act, New York Gen. Bus. L. § 340, et seq.

165. Therefore, Dumbo is entitled to recover its damages from Piece of Cake including treble damages, and its costs of suit including reasonable attorney's fees, to the fullest extent permitted by law.

166. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the continuing anticompetitive practices alleged herein, as available remedies at law are insufficient to correct the impact of Piece of Cake' ongoing anticompetitive impact on consumers and the market or to remedy the impact on Dumbo.

### EIGHTH CAUSE OF ACTION
(Against Piece of Cake
for Deceptive Practices in violation of Gen. Bus. L.  § 349
regarding "all-inclusive pricing")

167. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

168. As alleged above, Piece of Cake has engaged in deceptive acts and practices directed to consumers by, among other things, falsely claiming that its quoted prices are "all inclusive," and then charging bogus fees once Piece of Cake has already arrived, or, even worse, is in the process of moving items.

169. By reason of the foregoing, Piece of Cake has engaged in deceptive acts and practices in the conduct of its business, trade, and commerce and in the furnishing of services in New York

State, in violation of Gen. Bus. L. § 349, harming both consumers and its competitors, including Dumbo.

170. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

171. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

**NINTH CAUSE OF ACTION**
(Against Piece of Cake
for Deceptive Practices in violation of Gen. Bus. L.  § 349
regarding "astroturfing")

172. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

173. As alleged above, Piece of Cake has engaged in deceptive acts and practices directed to consumers by, among other things, unlawfully offering incentives, such as free or heavily discounted moving services, for positive reviews, a practice known as "astroturfing."

174. As alleged above, Piece of Cake has paid individuals to post fake reviews on its behalf, which is also "astroturfing."

175. By reason of the foregoing, Piece of Cake has engaged in deceptive acts and practices in the conduct of its business, trade, and commerce and in the furnishing of services in New York

State, in violation of Gen. Bus. L. § 349, harming both consumers and its competitors, including Dumbo.

176. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

177. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

<u>**TENTH CAUSE OF ACTION**</u>
(Against Piece of Cake,
for False Advertising in Violation of Gen. Bus. L. § 350
regarding "all-inclusive pricing")

178. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

179. As alleged above, Piece of Cake has engaged in false advertising directed to consumers by, among other things, falsely claiming that its quoted prices are "all inclusive," and then charging bogus fees once Piece of Cake has already arrived, or, even worse, is in the process of moving items.

180. By reason of the foregoing, Piece of Cake has engaged in deceptive acts and practices in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 349, harming both consumers and its competitors, including Dumbo.

181. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

182. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

**ELEVENTH CAUSE OF ACTION**
(Against Piece of Cake,
for False Advertising in Violation of Gen. Bus. L. § 350
regarding "astroturfing")

183. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

184. As alleged above, Piece of Cake has engaged in false advertising directed to consumers by, among other things, unlawfully offering incentives, such as free moving services, for positive reviews, as well as paying individuals to post fake reviews on its behalf, a practice known as "astroturfing."

185. By reason of the foregoing, Piece of Cake has engaged in false advertising in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 350, harming both consumers and its competitors, including Dumbo.

186. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational

damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

187. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

**TWELTH CAUSE OF ACTION**
(Against Piece of Cake,
for Deceptive Practices in Violation of Gen. Bus. L. § 349
regarding the safety of its business practices)

188. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

189. As alleged above, Piece of Cake has engaged in deceptive acts and practices directed to consumers by, among other things, pretending that it is operating a safe and legitimate business, when, in fact, its operations are predicated on serial unsafe and unlawful actions, including, *inter alia,* illegal parking, speeding, and other moving violations.

190. By reason of the foregoing, Piece of Cake has engaged in deceptive acts and practices in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 349, harming both consumers and its competitors, including Dumbo.

191. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

192. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

### THIRTEENTH CAUSE OF ACTION
(Against Piece of Cake,
for False Advertising in Violation of Gen. Bus. L. § 350
regarding the safety of its business practices)

193. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

194. As alleged above, Piece of Cake has engaged in false advertising directed to consumers by, among other things, pretending that it is operating a safe and legitimate business, when, in fact, its operations are predicated on serial unsafe and unlawful actions, including, *inter alia,* illegal parking, speeding, and other moving violations.

195. By reason of the foregoing, Piece of Cake has engaged in false advertising in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 350, harming both consumers and its competitors, including Dumbo.

196. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

197. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

**FOURTEENTH CAUSE OF ACTION**
(Against Piece of Cake,
for Unfair Competition in Violation of Gen. Bus. L.  § 349
regarding its labor and employment practices)

198. Dumbo repeats, realleges and reincorporates each of the foregoing allegations as if set forth in their entirety herein.

199. As alleged above, Piece of Cake has engaged in unfair competition, by among other things, pretending that it is operating in accordance with applicable labor laws, when, in fact, its operations are predicated on falsely classifying its employees as independent contractors of other entities, despite exercising a great deal and control over them. Its competitors, who do not engage in this multi-tier scheme of skirting labor laws, cannot compete legitimately.

200. By reason of the foregoing, Piece of Cake has engaged in unfair competition in the conduct of its business, trade, and commerce and in the furnishing of services in New York State, in violation of Gen. Bus. L. § 349, harming both consumers and its competitors, including Dumbo.

201. By reason of the foregoing, Dumbo is entitled to recover damages in an amount to be determined at trial, including, without limitation statutory damages, damages from the loss of customers and sales, damages from the loss of economic and business advantage, and reputational damage and loss of good will, as well as recover of its legal expenses and costs, including reasonable attorneys' fees.

202. Further, Dumbo seeks injunctive relief enjoining Piece of Cake from engaging in the deceptive practices alleged herein, as Dumbo's available remedies at law are insufficient to protect consumers or to compensate Dumbo for the damage to its reputation and ability to compete.

**WHEREFORE,** Plaintiff Dumbo prays that this Court enter judgment in its favor and against Defendant Dumbo as follows:

(a) Permanently enjoining Dumbo from violations of the Sherman Act, 15 U.S.C. §2, Donnelly Act, Gen. Bus. L. §340 et seq. and Gen. Bus. L.§§349-350, and from engaging in other unlawful acts and practices against consumers and against Dumbo as alleged herein;

(b) Awarding Dumbo its damages as alleged against Piece of Cake in amounts to be proved at trial, treble damages for violations of the Sherman Act and Donnelly Act, and general, compensatory, exemplary, punitive and statutory damages;

(c) Awarding Dumbo its legal expenses and costs, including reasonable attorneys' fees:

(d) Awarding Dumbo pre and post-judgment interest, and costs; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: March 10, 2026                                    **BARTON LLP**

                                                By:  _/s/ **Maurice N. Ross**_
                                                Maurice N. Ross
                                                711 Third Avenue, 14th Floor
                                                New York, NY  10017
                                                (212) 687-6262
                                                mross@bartonesq.com
                                                *Attorneys for Plaintiff*
                                                *Dumbo Moving and Storage, Inc.*

## VERIFICATION

**LIOR RACHMANY** affirms the following to be true under penalties of perjury, pursuant to the Civil Practice Law and Rules § 2106:

1. I am the Chief Executive Officer of Dumbo Moving & Storage Inc. ("Dumbo"), plaintiff in this action.

2. Dumbo is a corporation formed under the laws of the State of New York.

3. I verify that I have read the foregoing **VERIFIED COMPLAINT** know the contents thereof. The **VERIFIED COMPLAINT** is true to my own knowledge, except as to the matters stated therein to be alleged upon information and belief, as to those matters, I believe them to be true.

I affirm on this **10** day of March 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: New York, New York
March **10** 2026

_____
Lior Rachmany