# BARTON

**MAURICE N. ROSS**
**DIRECT: 212.885.8845**
MROSS@BARTONESQ.COM

May 28, 2026

**VIA PACER**
Hon. Edgardo M. Ramos
United States District Court, Southern District of New York
40 Centre Street, Courtroom 619
New York, NY 10007

ATTORNEYS AT LAW

711 Third Avenue
14th Floor
New York, NY 10017

(212) 687.6262  Office
(212) 687.3667  Fax

bartonesq.com

# MEMO ENDORSED
at page 3

Re:   ***Dumbo Moving & Storage v. Piece of Cake Moving & Storage***
      **Index No. 1:26-cv-01378**

Your Honor:

We represent Plaintiff Dumbo Moving & Storage ("Dumbo") and write pursuant to the Your Honor's Individual Rule 2(A)(ii) requesting a pre-motion conference concerning Dumbo's proposed motion for leave to amend its pleadings. Dumbo requests leave of the Court to file an Secon Amended Complaint (the "SAC") for the purpose of adding four similarly situated new plaintiffs and common allegations among all plaintiffs. The four proposed new parties are: Big Apple Moving & Storage, Inc., All Star Moving & Storage, Brownstone Brothers Moving Inc., Zero Gravity Moving LLC (collectively, the "Proposed Plaintiffs"). The Proposed Plaintiffs, together with Dumbo and Defendant Piece of Cake Moving & Storage Inc.'s ("Defendant") are competitors in the New York moving industry. Each of the Proposed Plaintiffs is a victim of Defendant's anticompetitive conduct, its unfair competition and its false and misleading advertising in violation of the Lanham Act. In addition, Dumbo proposes to update its predatory pricing causes of action by adding allegations that Defendant precipitously raises its prices at the beginning and end of the month, when demand is highest, but engages in predatory pricing otherwise. This also violates applicable New York State regulations, which require common carriers to publish tariffs which specify moving prices by distance and volume, and which do not permit the dynamic price changes of Defendant. The SAC also provides further detail into Defendant's excluding other moving companies from buildings and Proposed Plaintiffs loss of market share. A true and correct clean copy of the SAC is annexed hereto as **Exhibit 1** and a true and correct copy of the SAC with red-lined changes is annexed hereto as **Exhibit 2.**

Fed. R. Civ. P. 15(a)(2) specifies that the Court should "freely give leave [to amend] when justice so requires." If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party "at any time, on just terms," also governs. Fed. R. Civ. P. 21.  However, the inquiry remains substantially the same, as the "showing necessary under Rule 21 is the same as that required under Rule 15(a) [2]." *Johnson v. Bryson,* 851 F.Supp.2d 688, 703, 2012 WL 983563, at *9 (S.D.N.Y. March 22, 2012). Further, "under both Rules 15 and 21, leave to amend may be denied [only] where the proposed amendment would be futile or where it would

Hon. Edgardo Ramos
Page 2 out of 3

result in prejudice to the opposing parties." *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 146–47 (S.D.N.Y. 2012).

The SAC would neither be futile nor prejudicial. "[A] proposed amendment is futile if it could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 151 F. Supp. 3d 319, 324 (S.D.N.Y. 2015). "A firm engaged in predatory pricing bites the bullet and forgoes present revenues to drive a competitor from the market. Its intent, of course, is to recoup lost revenues through higher profits when it succeeds in making the environment less competitive." *Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vermont, Inc.*, 845 F.2d 404, 407 (2d Cir. 1988). That is precisely what the SAC alleges. Further, the Lanham Act claims concern false advertising of prices and services that materially mislead consumers and cause injury to both consumers and Plaintiffs (as competitors to Defendant) in the New York moving market.

The SAC alleges, with specific examples of money-losing conduct, that Defendant deliberately priced its services below the cost of doing business to obtain up to 66% of the relevant market. See SAC ¶¶15-25. Where the SAC differs from Dumbo's operative complaint, however, is that it supplies more detail into how Defendant has used its market power to recoup the losses it has suffered from engaging in predatory pricing. Defendant is able to recoup those losses by nearly *doubling* its prices at times of peak demand, when most consumers' leases are expiring and are moving in and out of their residences. SAC at ¶¶26-29. However, because Defendant has driven out so much of the competition, consumers have no choice but to pay these inflated prices. *Id.* Further, these practices conflict with New York regulations which require common carriers to publish "rates [which] must be explicitly stated in cents or in dollars and cents, per 100 pounds, per mile, per hour, per cubic foot, per ton of 2,000 pounds, per ton of 2,240 pounds, per truckload (of stated amount)…" *Id.* at ¶30 (*quoting* 17 C.R.R. N.Y. § 826.4). Competitors who comply with the tariff regulations are at a substantial disadvantage compared to Defendant.

The SAC also alleges methods by which Defendant uses its substantial market power to illegally restrain competition to the detriment of consumers. Defendant caused several large real estate management groups to work exclusively with Defendant and not its competitors by disparaging the quality of its competitors' services and falsely alleging that its competitors could not provide adequate insurance. *Id*. ¶¶ 40-52. The SAC provides new details into how Defendant falsely denigrated its competitor's insurance by informing buildings that Solidarity Movers' insurance was inadequate, because it lacked a form only used in construction, not moving. *Id.* at ¶49. The SAC further alleges that Defendant has entered into an agreement with Stellar Management, which manages over eighty buildings in New York City, to become Stellar's exclusive mover, pursuant to which Stellar has blocked at least two of Defendant's largest competitors from its buildings, including Dumbo. *Id.*

The SAC also alleges that once Defendant had achieved enough market share to dominate the market, Defendant engaged in a series of unlawful labor practices, such as avoiding paying its movers minimum wage or benefits. *Id.* ¶61. These practices were made possible by Defendant knowingly misclassifying its movers as independent contractors of "crews," even though Defendant exercised substantial control over its movers. *Id.* ¶¶64-68. Defendant's unlawful labor practices are anticompetitive insofar that they permit Defendant to recoup its losses now that it has achieved sufficient market share to exclude the competition. See *SC Innovations, Inc. v. Uber Techs*., 2020 WL 2097611, at *10 (N.D. Cal. May 1, 2020) (plaintiff stated predatory pricing claims

because it showed that defendant could recoup its losses by raising the price of "transactions to supracompetitive levels…") In addition, the SAC alleges that as part of its scheme to obtain monopoly power, Defendant misled consumers by claiming that its pricing was "all inclusive", but in fact, it required consumers to pay mandatory hidden fees and surcharges, including, among others, mandatory tipping to "crew" members. SAC ¶¶ 105-113. These hidden charges were disclosed to consumers by "crew" members only once the moves had begun, when consumers had no practical choice other than to pay the hidden charges. *Id*. Finally, one of the reasons that many customers were misled into using Defendant's moving services, despite the hidden fees, is because Defendant has engaged in an anticompetitive agreement with Yelp and other advertisers to minimize its competitors' advertising footprint while maximizing its own. *Id.* ¶¶77-83. Indeed, Defendant publicly announced a partnership with Yelp, while its competitors were banned from the platform. *Id*. ¶¶78-82. After obtaining monopoly power through predatory pricing, Defendant engaged in the acts described above, which have continued to unreasonably restrain competition in the market, in order to recoup its losses – precisely the gravamen of claims for monopolization and attempted monopolization. See *Kelco Disposal, Inc.* 845 F.2d at 409; *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 143 (S.D.N.Y. 2016).

The agreements described above between Defendant and (i) building owners and employees, (ii) "crews" which employ Defendant's movers and (iii) advertisers are also sufficient to state claims for restraint of trade in violation of §1 of the Sherman Act. The SAC alleges with specificity an actual agreement between Defendant and Stellar Management to make Defendant Stellar's "preferred mover," which is a smokescreen for barring the Proposed Plaintiffs. SAC at ¶41. The SAC further alleges that Defendant has entered into substantially similar agreements with no less than five other major real estate management organizations. *Id.* at ¶51. "It is well established, for example, that [c]oordination of horizontal agreements in restraint of trade… by entering into a series of identical vertical agreements with multiple parties may subject all participants to antitrust liability." *Laumann v. Nat'l Hockey League,* 907 F. Supp. 2d 465, 486 (S.D.N.Y. 2012). *See also Maxon Hyundai Mazda v. Carfax, Inc.*, No. 13–cv–2680 (AJN), 2014 WL 498826 (S.D.N.Y. Sept 29, 2014); *Dial Corporation v. News Corporation*, 165 F.Supp.3d 25 (S.D.N.Y 2016).

In addition, the SAC alleges that Defendant engaged in false advertising in violation of the Lanham Act including, at least, (i) claiming that its prices were all inclusive, (ii) committing astroturfing, (iii) representing that it complied with applicable laws and regulations.

Moreover, the Proposed Plaintiffs should be added because they are similarly situated parties with essentially the same claims against Defendant, and thus, judicial economy and consistency would be served by trying all of their allegations against Defendant in one proceeding. Finally, Defendant can cannot credibly claim prejudice "Prejudice arises when the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Soroof Trading Dev. Co.* 283 F.R.D. at 146–47. (*quoting Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993)). None of those factors are applicable here, as Defendant has not even filed a responsive pleading.

Defendant is directed to respond by June 3, 2026.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J.
Dated: _May 29, 2026_
New York, New York

Respectfully submitted,
*/s/ Maurice N. Ross*